The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Willis, the briefs on appeal and argument of counsel. The appealing party has not shown good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives or amend the Opinion and Award. Accordingly, the Opinion and Award by Deputy Commissioner Willis is affirmed.
* * * * * * * *
This case was originally heard, in part, before Deputy Commissioner Willis on 17 December 1993 in Winston-Salem. Following the hearing, the record remained open to allow the parties to produce additional evidence. Since that time the parties have submitted the deposition of Dr. John T. Hayes. In addition to the evidence accepted at the hearing, this deposition was made a part of the record of this case.
The undersigned finds as fact and concludes as matters of law the following which were entered into by the parties at the hearing as:
STIPULATIONS
1. The North Carolina Industrial Commission has jurisdiction over the subject matter of this case, and the parties are properly before the Industrial Commission.
2. At all times pertinent hereto, there was an employee-employer relationship between the plaintiff and the defendant.
3. CNA is the insurance carrier on the risk.
4. The dates of the alleged injury by accident are 28 June 1991 and 30 August 1991.
5. Plaintiff's average weekly wage can be determined from a Wage Chart (Industrial Commission Form 22) accepted at the hearing as stipulated exhibit #3.
6. Plaintiff has not worked for the defendant from 31 October 1991 and continuing through the date of the hearing.
* * * * * * * *
Based upon the competent evidence of record, the Full Commission makes the following additional:
FINDINGS OF FACT
1. At the time of the hearing, plaintiff was 44 years old, having been born on 18 November 1949. Plaintiff earned a college degree in business in 1989. Plaintiff had worked for two years at Central Triangle Imaging and for one and a half years at Baptist Memorial Hospital. For approximately five years before she began working for defendant, plaintiff had attended school and cared for her children. On 15 May 1991 plaintiff started working for defendant in a job in which she delivered bank bags to banks between Winston-Salem and Greensboro. In the morning plaintiff would drive from Winston-Salem to Greensboro to make deliveries. She would wait in Greensboro until the afternoon when she would make pick-ups in Greensboro and return to Winston-Salem.
2. On 28 June 1991 (about six weeks after she started working for defendant) plaintiff was in a company van with her daughter. Plaintiff had made her morning deliveries and was going to lunch before she began her afternoon pick-ups. After lunch plaintiff was going to take her daughter for a haircut. It was against company policy for plaintiff's daughter to be in the company van with plaintiff or for plaintiff to use the van to take her daughter for a haircut. Plaintiff knew this policy and knew that she was violating it.
3. At about noon, plaintiff was stopped at a stop sign, when she was struck from behind by another driver. Plaintiff was wearing a lap seat belt, but she was thrown forward into the steering wheel. Damage to the van was very minimal, with some paint from the other car on the bumper. This incident was an interruption from plaintiff's regular work routine by unusual circumstances likely to result in unexpected consequences, and an injury by accident arising out of and in the course of her employment with defendant-employer.
4. Plaintiff called defendant after the incident and reported the incident to her supervisor. Plaintiff was told to return to Winston-Salem and report to Prime Care for medical treatment. Plaintiff was examined at Prime Care on the day of the incident. At the examination plaintiff reported pain in her neck and thoracic spine, but did not report low back pain. X-rays were taken of the thoracic spine. The doctor prescribed rest, heat and medication. Plaintiff was excused from work for three days. The doctor told plaintiff to return on 1 July 1991 if she needed further treatment, and plaintiff did not return.
5. Plaintiff returned to work on 1 July 1991 (three days later). Upon her return, plaintiff filled out an accident report with her supervisor. Plaintiff performed her regular job for about one week, then plaintiff was assigned to a different route which was to make deliveries to High Point. This route involved moving heavier boxes than the Greensboro route. Plaintiff worked on the High Point route for about four months, through 30 October 1991. Plaintiff worked well after her return to work and made no complaints of back problems to her supervisor.
6. On 10 September 1991 plaintiff returned to Prime Care for medical treatment. At this examination plaintiff reported that she had injured her back the day before while performing heavy lifting. Plaintiff had not worked for defendant on 9 September 1991, and she reported this medical examination as a "private visit" (the examination 11 weeks earlier had been reported as a work-related examination). After the examination, plaintiff did not report any work-related injury to her supervisor and did not fill out any accident report, as she had earlier in July 1991. Any injury plaintiff received on 9 September 1991 was not related to her employment with defendant.
7. Plaintiff went to the emergency room on 1 October 1991. At this examination plaintiff reported the motor vehicle accident, and she reported low back pain with numbness and tingling in her right leg. Plaintiff told the doctor that she had hurt her back the day before (30 September 1991) while lifting boxes at work. She told the doctor that after lifting boxes she could not get up due to back pain. Plaintiff was given a prescription for medication and an excuse to be out of work. The next day plaintiff was out of work, but she returned to work on 2 October 1991. Upon her return to work, plaintiff did not make any accident report to her supervisor, as she had in July 1991 after the motor vehicle accident. In her answers to interrogatories plaintiff gives the date of 30 September 1991 as the date of her alleged second injury, although this claim involves an alleged second injury on 30 October 1991.
8. On 21 October 1991 plaintiff went to Frederick Kennedy, a chiropractor. Plaintiff reported the motor vehicle accident in June 1991 to the chiropractor. Plaintiff told the chiropractor that after she had the motor vehicle accident she had developed a stiff neck and had developed low back pain about one and one-half weeks later. The chiropractor provided daily treatment to plaintiff for seven days, through 1 November 1991.
9. Plaintiff claims that on 30 October 1991 she was performing her deliveries in High Point; and while lifting boxes, she felt a pop in her back and could not stand up due to low back pain. Plaintiff did not make a report of this alleged accident to her supervisor, as she had done in July 1991. Plaintiff did not return to work for defendant after the alleged accident of 30 October 1991. Significantly, plaintiff received treatment from her chiropractor on 30 October, 31 October and 1 November 1991, but she did not report the alleged accident of 30 October 1991 to the chiropractor.
10. On 6 November 1991 plaintiff was examined by Dr. P. Merrill White, an orthopedic surgeon. Plaintiff reported the motor vehicle accident in June 1991 to Dr. White, and she reported an incident of lifting boxes at work one month earlier (which would possibly correspond to the alleged accident of 30 September 1991). Plaintiff did not report an alleged accident occurring on 30 October 1991, one week earlier. Plaintiff told Dr. White that she had suffered low back pain for ten days after the motor vehicle accident, with this pain decreasing over the ten days by 40 percent, although she earlier told her chiropractor that the low back pain did not start until one and one-half weeks after the motor vehicle accident, and in her first medical examination after the motor vehicle she did not report any low back pain. Dr. White diagnosed a soft tissue injury to the cervical and lumbar spine, and he released plaintiff to return to work with restrictions of not lifting more than 15 pounds and not driving for more than two hours. Dr. White recommended a conservative course of treatment which he anticipated could be completed in 12 to 14 weeks. Although Dr. White recommended that plaintiff return for a follow-up evaluation in six weeks, plaintiff did not return to Dr. White.
11. The day after the examination by Dr. White, plaintiff gave a recorded interview to an adjuster for the defendant insurance carrier (7 November 1991). During this interview plaintiff reported the motor vehicle accident in June 1991, but she did not report the alleged accidents while lifting boxes at work on 30 September 1991 and 30 October 1991, although the latter accident had allegedly occurred one week earlier on her last day at work.
12. On 4 December 1991 plaintiff returned to Prime Care on instructions from defendant, and plaintiff was referred to Dr. John T. Hayes at defendants' request. The examination by Dr. Hayes was on 9 December 1991, and Dr. Hayes suspected a herniated spinal disc at level L4-5. Dr. Hayes gave plaintiff an excuse to be out of work "until further notice." Plaintiff did not return to Dr. Hayes nor seek any other medical treatment for one and one-half years, through May 1993. Although plaintiff testified that she did not seek medical treatment after December 1991 because she could not afford the treatment, Dr. Hayes made appointments for plaintiff which she did not keep and there is no evidence that Dr. Hayes refused to provide treatment to plaintiff due to her financial situation.
13. Plaintiff returned to Dr. Hayes in May 1993 and received treatment for about two months. At this time plaintiff suffered from degenerative disc disease of the spine with mild bulging of spinal discs at level L5-S1. Plaintiff did not need any surgical intervention.
14. After the alleged incident of 30 October 1991 plaintiff did not return to work for defendant. At the time of the hearing, plaintiff had been out of work and not working for any employer for a period of more than two years. Plaintiff testified that during this time she has applied for positions at Bowman Gray School of Medicine, with several doctor's offices, with AMP, and with an airline.
15. The motor vehicle accident of 28 June 1991 did not cause an injury to plaintiff's lower back, but caused a temporary injury to her neck and thoracic spine. This condition resolved in three days, and any later problems plaintiff had with her back were not related to the motor vehicle accident. The motor vehicle accident of 28 June 1991 did not cause any permanent partial impairment to plaintiff's back.
16. Based on plaintiff's demeanor at the hearing, based on plaintiff's failure to report the alleged accidents of 30 September 1991 and 30 October 1991, and based on inconsistencies in plaintiff's reports to her doctors and testimony, the Full Commission finds that plaintiff's testimony was not credible. Based on plaintiff's lack of credibility, the Full Commission finds that the alleged accidents of 30 September 1991 and 30 October 1991 did not occur.
The foregoing stipulations and findings of fact engender the following:
CONCLUSIONS OF LAW
1. On 28 June 1991 plaintiff sustained an injury by accident arising out of and in the course of her employment with defendant-employer. N.C.G.S. § 97-2 (6).
2. As a result of the accident of 28 June 1991, plaintiff lost less than seven days from work; and therefore, plaintiff is not entitled to any temporary total disability compensation. N.C.G.S. § 97-28.
3. As a result of the injury by accident of 28 June 1991, plaintiff is not entitled to any permanent partial disability compensation. N.C.G.S. § 97-31.
4. As a result of the injury by accident, plaintiff is entitled to the payment for the medical treatment provided to her at Prime Care on 28 June 1991. Plaintiff is not entitled to any further medical treatment she had received since 29 June 1991. N.C.G.S. § 97-25.
5. On 9 September 1991, 30 September 1991 and 30 October 1991, plaintiff did not sustain an injury by accident arising out of and in the course of her employment with defendant-employer, in that plaintiff did not injure her back as a result of a specific traumatic incident while performing her assigned job duties. N.C.G.S. § 97-2 (6).
The foregoing stipulations, findings of fact and conclusions of law engender the following:
AWARD
1. Plaintiff's claim for temporary total disability compensation and permanent partial disability compensation must be, and the same is hereby, DENIED.
2. Defendants shall pay for the medical treatment provided for plaintiff on 28 June 1991 at Prime Care. Defendants shall not be responsible for any further medical treatment plaintiff has received.
3. Each side shall pay their own costs, except that defendants shall pay an expert witness fee as provided by previous order.
 S/ ________________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
S/ ________________ DIANNE C. SELLERS COMMISSIONER